**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

<table>
<tr>
<td>

SANDRA LOSURDO, individually and as Administratrix of the Estate of WILLIAM A. LOSURDO, deceased, ADAM LOSURDO, and NICOLE SACCO,

Plaintiffs,

v.

VIACOMCBS INC., *et al.*,

Defendants.

</td>
<td>

Civil Action No. 21-1965 (JXN)(LDW)

**OPINION**

</td>
</tr>
</table>

**NEALS**, District Judge

William A. Losurdo ("Losurdo") was exposed to asbestos while serving on a Navy ship. He later developed mesothelioma and died. Losurdo's estate and family[1] (collectively, "Plaintiffs") sued two manufacturers of asbestos-containing products aboard Losurdo's ship: Paramount Global[2] ("Westinghouse") and General Electric Company ("GE") (collectively, "Defendants"). Relevant here, Plaintiffs seek damages for Losurdo's pre-death pain and suffering.

Before the Court are motions *in limine* to bar evidence of Losurdo's pre-death pain and suffering filed by Westinghouse (ECF No. 220), and GE (ECF No. 222). Plaintiffs opposed (ECF No. 225), and GE and Westinghouse replied (ECF Nos. 226, 227). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1333 and 1441(a), respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure[3] 78 and Local Civil

---

[1] Sandra Losurdo, Adam Losurdo, and Nicole Sacco.

[2] "Paramount Global (a Delaware corporation formerly known as ViacomCBS Inc.; as CBS Corporation; and as Viacom, Inc.) is a successor by merger to CBS Corporation (a Pennsylvania corporation formerly known as Westinghouse Electric Corporation." (Westinghouse Summ. J. Br. at 1 n.1, ECF No. 175-2.)

[3] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

1

Rule 78.1. For the reasons set forth below, Defendants' motions *in limine* to bar evidence of pain and suffering damages (ECF Nos. 220; 222) are **GRANTED**.

I.        **BACKGROUND**[4]

This case arises from Losurdo's exposure to asbestos. (Pls.' Statement of Material Facts ("PSOMF") ¶ 2, ECF No. 191; Westinghouse Resp. to PSOMF ("WRSOMF") ¶ 2, ECF No. 194-9; GE Resp. to POSMF ("GERSOMF") ¶ 2, ECF No. 195-1.)

Losurdo enlisted in the United States Naval Reserve on August 2, 1967, and served on active duty in the United States Navy from February 11, 1969, through November 13, 1970. (PSOMF ¶¶ 8, 10.) While on active duty, Losurdo was assigned to the U.S.S. *Mississinewa* ("*Mississinewa*"), an oil tanker "responsible for refueling [war] ships at sea . . . so that those ships [did not have to] continually come back into port." (*Id.* ¶¶ 11, 13.)  Losurdo initially worked as a deckhand for his first three months aboard the *Mississinewa*, where he chipped paint and swabbed the decks. (*Id.* ¶ 17.)  For his remaining eighteen months aboard the *Mississinewa*, Losurdo became a "petty officer, third class storekeeper."  (*Id.* ¶¶ 15–16.)

In March 1970, the *Mississinewa* experienced mechanical problems en route to Puerto Rico and became marooned off the coast of Virginia.[5] (DuPont Cert. Ex. 4 ("First Losurdo Dep.") 72:3–19, ECF No. 191-4.)  The *Mississinewa* was hauled to the Boston Naval Shipyard to undergo repairs. (*Id.*)  Losurdo

---

[4] For brevity and convenience, the Court cites to the parties' Rule 56.1 statements filed in connection with the previously decided summary judgment motions, which incorporate the evidentiary citations contained therein. The Court sets forth only those material facts necessary to decide the pending *in limine* motions.  All facts are undisputed unless otherwise noted.  Because GE and Westinghouse's statements of undisputed material facts often overlap and Plaintiffs submitted a consolidated statement of material facts in opposition to both summary judgment motions, the Court discusses the material facts relevant to both *in limine* motions together.

[5] GE and Westinghouse contend the Navy records show the *Mississinewa* did not arrive to the Boston Naval Shipyard until later. According to GE, the *Mississinewa* did not arrive at the Boston Naval Shipyard until October 21, 1970. (*See* GERSOMF ¶ 23.) According to Westinghouse, the *Mississinewa* did not begin the overhaul until August 29, 1970.  (*See* WRSOMF ¶ 23.)  The Court afforded all reasonable inferences to Plaintiffs as the non-moving parties and found the timing of when the *Mississinewa* arrived at the Boston Naval Shipyard constituted a genuine dispute of material fact as to the amount of time Losurdo may have been exposed to the asbestos-integrated products.

spent the remaining eight months of his active-duty service, through November 1970, aboard the *Mississinewa* while it was drydocked at the Boston Naval Shipyard. (*Id.* at 72:19–22.)

As storekeeper, Losurdo delivered "whatever was needed for . . . repairs" to the *Mississinewa's* engine room three to four times per week, and spent thirty to sixty minutes in the engine room each time. (DuPont Cert. Ex. 3 ("Second Losurdo Dep.") 30:22–31:1, 31:3–4, 32:19–20, ECF No. 191-3.) When Losurdo made deliveries to the engine room, he was fifteen to twenty feet from equipment being worked on (*id.* at 32:10–14), and observed "[d]rilling, cutting, [and] particles flying around." (*Id.* at 105:15–17).

Losurdo testified that his office was only four feet away from the engine room's entrance. (First Losurdo Tr. 69:1–10.) Losurdo further stated: "when you opened up the compartment door to go down into the boiler room, . . . dust was flying because they were probably sawing . . . equipment apart, the bad equipment." (*Id.* at 91:9–14.) While Losurdo could not identify the specific equipment being dismantled, he testified they were "large pieces of equipment." (*Id.* at 91:16–24).

GE manufactured the *Mississinewa's* two main propulsion turbines. (*See* DuPont Cert. Ex. 11 ("Howenstein Dep.") 21:15–23, ECF No. 191-11.) Westinghouse produced the *Mississinewa's* three ship service turbine generators ("SSTGs"). (*See* DuPont Cert. Ex. 9 ("Belanger Dep.") 37:11–22, ECF No. 191-9.) Plaintiffs allege that the propulsion turbines and SSTGs had parts and materials containing asbestos. (*See* Third Am. Compl. ¶ 12, ECF No. 126-3.) Plaintiffs claim Losurdo was exposed to asbestos while on the *Mississinewa*. (*See generally id.*) In August 2020, Losurdo was diagnosed with mesothelioma (*see* First Losurdo Dep. 154:12–20), which caused his death on January 15, 2022. (*See* DuPont Cert. Ex. 2 ("Death Cert."), ECF No. 191-2).

Plaintiffs sued multiple companies and the manufacturers of the *Mississinewa's* parts and machinery under theories of negligence and strict liability. (*See, e.g.*, Third Am. Compl.) The two remaining defendants, GE and Westinghouse, both moved for summary judgment (ECF Nos. 174,

175), which the Court granted in part as to Plaintiffs' claims for punitive damages and loss of consortium damages.

Defendants each filed motions *in limine* to bar evidence of pain and suffering damages (Westinghouse Mot., ECF No. 220; GE Mot., ECF No. 222); Plaintiffs filed opposition to both motions (Pls.' Opp'n, ECF No. 225); to which Defendants replied (GE Reply, ECF No. 226; Westinghouse Reply, ECF No. 227). The motions are ripe for determination.

## II.       **LEGAL STANDARD**

Motions *in limine* "allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Mastripolito v. Jefferson Health-N.J.*, 583 F. Supp. 3d 622, 625 (D.N.J. 2022) (quoting *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017)). "The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Id.* (quoting *Tartaglione*, 228 F. Supp. 3d at 406). The party seeking to exclude evidence "bears the burden of demonstrating that the challenged evidence is inadmissible 'on any relevant ground.'" *Id.* (quoting *Apotex, Inc. v. Cephalon, Inc.*, No. 06-2768, 2017 WL 2362400, at *2 (E.D. Pa. May 31, 2017)).

This Court may hear motions *in limine* "because it has the inherent authority to manage cases brought before it." *Ebenhoech v. Koppers Indus., Inc.*, 239 F. Supp. 2d 455, 461 (D.N.J. 2002) (quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). The Court has the discretion to rule on evidentiary issues *in limine* "in appropriate cases." *Id.* (quoting *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). For instance, granting an *in limine* motion is appropriate to "shield the jury from unfairly prejudicial or irrelevant evidence." *Id.* (citing *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988)). And, while ruling on an *in limine* motion can prevent "needless argument at trial," the Court should not rule prematurely if the context of trial would provide clarity. *Id.* (citations omitted).

### III.    **DISCUSSION**[6]

Defendants contend that under maritime law, Plaintiffs may not recover damages for a decedent's pre-death pain and suffering in claims asserted against a product manufacturer for exposure to asbestos aboard a naval vessel. (*See* Westinghouse Moving Br. at *5,[7] ECF No. 221; GE Moving Br. at *7, ECF No. 223.) For such relief, Defendants reference and rely in part upon this Court's prior summary judgment ruling in this action that punitive damages and loss of consortium damages are not recoverable under maritime law. (*See* Westinghouse Moving. Br. at *8 (citing Summ. J. Op. at 29–33, ECF No. 204)); GE Moving Br. at *7 (same).)[8]

Plaintiffs counter that New Jersey state law allows Plaintiffs to recover pain and suffering damages because (1) general maritime law does not preclude recovery of survival damages in admiralty; and (2) admiralty law defers to state law when the specific statutory provisions in admiralty do not apply to Plaintiffs' claims. (Pls.' Opp'n Br. at *5.) Plaintiffs further assert that Losurdo's estate carries the pain and suffering claim forward in a survival action. (*Id.* at *6.) Plaintiffs also argue that damages should be introduced as evidence at trial to create a complete trial record, to preserve issues for appeal, and to promote judicial efficiency. (*Id.*)

The Court disagrees and, for the reasons that follow, finds that pain and suffering damages are not available for claims asserted against a product manufacturer for exposure to asbestos aboard a naval vessel.

"Substantive maritime law applies to a cause of action brought in admiralty." *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 73 (3d Cir. 1996) (citing *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986)). But the "exercise of federal admiralty jurisdiction does not result

---

[6] Because both Defendants make similar arguments in support of their motions *in limine*, the Court at times addresses their arguments simultaneously.

[7] Pincites preceded by an asterisk (*) use ECF page headers unless otherwise indicated.

[8] This Court previously held that maritime law applies where, as here, plaintiffs allege asbestos exposure to turbines in the engine rooms of Navy ships while docked at naval shipyards. (*See* Summ. J. Op. at 6 (collecting cases).)

in automatic displacement of state law." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 545 (1995). Rather, a "fundamental feature of admiralty law" is that "federal admiralty courts sometimes do apply state law." *Id.* at 546 (citations omitted). Specifically, courts may supplement federal maritime law with state law remedies in "maritime wrongful-death cases in which no federal statute specifies the appropriate relief and the decedent was not a seaman, longshore worker, or person otherwise engaged in a maritime trade." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 202 (1996)

Neither the Third Circuit nor the United States Supreme Court has squarely addressed whether plaintiffs may seek damages for a decedent's pre-death pain and suffering in claims asserted against a product manufacturer for asbestos exposure aboard a naval vessel. This Court, however, finds the Supreme Court's decision in *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990), dispositive.[9] In *Miles*, the Supreme Court recognized a general maritime cause of action for the wrongful death of a seaman. *Id.* at 30. The Supreme Court considered the damages available under wrongful death actions pursuant to the Jones Act, 46 U.S.C. § 30104, *et seq.*, and the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 30301, *et seq. See id.* at 28–33. The Supreme Court held that "the Jones Act provides an action in negligence for the death or injury of a seaman," *id.* at 29, but did not permit "recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman," *id.* at 33. In so concluding, the Supreme Court noted it was "restor[ing] a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law." *Id.*

Before *Miles*, no uniform rule governed damages in actions for the wrongful death of a seaman. "DOHSA, by its terms, limits recoverable damages in wrongful death suits to '*pecuniary* loss sustained

---

[9] As have other courts in this Circuit. *See, e.g.*, *Young v. John Crane, Inc.*, No. 21-4493, 2024 WL 5455635, at *1 (E.D. Pa. June 11, 2024).

by the persons for whose benefit the suit is brought.'" *Id.* at 31 (quoting 46 U.S.C. § 762). And DOHSA's "explicit limitation forecloses recovery for non-pecuniary loss, such as loss of society, in a general maritime action." *Id.* Unlike DOHSA, "the Jones Act does not explicitly limit damages to any particular form." *Id.* at 32. But the Supreme Court noted the Jones Act "makes applicable to seamen the substantive recovery provisions of the older [Federal Employers' Liability Act ("FELA")]." *Id.* Like the Jones Act, FELA does not "limit explicitly the 'damages' to be recovered." *Id.* But FELA, its own predecessor statute, "and the many state statutes that followed it consistently had been interpreted as providing recovery only for pecuniary loss." *Id.* "When Congress passed the Jones Act, the [judicial] gloss on FELA, and the hoary tradition behind it, were well established." *Id.* The Supreme Court concluded that, by "[i]ncorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well." *Id.* Accordingly, the Court in *Miles* uniformly limited recovery for a seaman's death to pecuniary loss, whether brought under DOHSA, general maritime law, or the Jones Act. *Id.*

Subsequent decisions have reinforced the *Miles* Court's intent for uniformity under maritime law. *See, e.g.*, *Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116, 123–24 (1998) (holding that a decedent's relatives could not recover "for a decedent's pre-death pain and suffering" under general maritime law); *Dutra Grp. v. Batterton*, 588 U.S. 358, 377 (2019) (finding punitive damages unavailable under general maritime law or Jones Act); *Scarborough v. Clemco Indus.*, 391 F.3d 660, 668 (5th Cir. 2004) (holding that neither a Jones Act seaman nor his survivors "may recover nonpecuniary damages from non-employer third parties.").

In *Batterton*, the Supreme Court created a three-part test for evaluating whether certain kinds of damages are available under maritime law. *See Batterton*, 588 U.S. at 369. Under the *Batterton* test, damages are available under maritime law only if: (1) such damages "have traditionally been awarded" for the instant claim, *id.* at 372; (2) "conformity with parallel statutory schemes would require such damages," *id.* at 369; or (3) the court is "compelled on policy grounds" to allow the damages, *id.* at 372.

7

The test is specific to a plaintiff's cause of action. *See id.* at 369–72. The Court applies the *Batterton* test accordingly.

### A. Courts Did Not Traditionally Award Pain and Suffering Damages in Maritime Negligence Actions.

Under the first *Batterton* prong, the Court may award pre-death pain and suffering damages if such damages were traditionally awarded during "the formative years of the personal injury unseaworthiness claim." *Id.* at 372. Here, such damages were not. A decedent's representative may recover damages for the decedent's pain and suffering in a survival action. *See Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622, 637 (3d Cir. 1994). But the holding in *Miles* is dispositive: "Under traditional maritime law, . . . there is no right of survival; a seaman's personal cause of action does not survive the seaman's death." 498 U.S. at 33. And while the Supreme Court in *Miles* acknowledged a recent trend of courts awarding survival damages in maritime actions, *see id.* at 34 (collecting cases), the Court noted those cases "dictate[d] a *change* in the general maritime rule against survival," *id.* (emphasis added). Accordingly, as the Supreme Court held in *Miles*, traditional maritime law did not permit a deceased seaman's relatives to maintain a survival action and recover pre-death pain and suffering damages. *Id.* at 33. Thus, *Batterton's* first prong does not allow for pain and suffering damages in this case.

### B. Parallel Federal Statutory Schemes Do Not Require Pain and Suffering Damages.

Under *Batterton's* second prong, pre-death pain and suffering damages are available if "conformity with parallel statutory schemes would require such damages." *Batterton*, 588 U.S. at 369. Both the Jones Act and DOHSA are relevant to Plaintiffs' claim because Losurdo "was a seaman who died due to the negligence of a third-party manufacturer." *Mullinex v. John Crane Inc.*, 606 F. Supp. 3d 289, 295 (E.D. Va. 2022).

Neither parallel statutory scheme, however, requires pre-death pain and suffering damages in this case. The Jones Act "permits survival damages for pre-death pain and suffering . . . in negligence claims

8

by seamen against their employers." *Id.* Losurdo worked for neither Westinghouse nor GE. Thus, survival damages are not available to Plaintiffs under the Jones Act. DOHSA, which governs wrongful death claims for acts occurring more than three miles off the shore of the United States, *see* 46 U.S.C. § 30302, does not permit survival damages. *Miles*, 498 U.S. at 35 ("At the federal level, DOHSA contains no survival provision."). The Court, therefore, finds that parallel statutory schemes do not require recovery for pre-death pain and suffering damages in this case. To the contrary, the parallel statutory schemes *prohibit* survival damages in this case. Accordingly, pre-death pain and suffering damages are unavailable under *Batterton's* second prong.

### C.    Policy Considerations Do Not Compel Pain and Suffering Damages

"In contemporary maritime law, [the Court's] overriding objective is to pursue the policy expressed in congressional enactments . . . ." *Batterton*, 588 U.S. at 374. This prong "requires courts to analyze congressional enactments more carefully to assess whether Congress has taken a legislative approach that is consistent enough to *compel* courts' adherence." *Mullinex*, 606 F. Supp. 3d at 296.

Congress has not taken a consistent-enough legislative approach to maritime survival damages to compel the Court to award pre-death pain and suffering damages in this case. The Jones Act allows pain and suffering damages only in "claims by seamen against their employers." *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 407 (1970). This action is not against Losurdo's employer. "DOHSA does not permit survival damages in maritime wrongful death claims in virtually all other circumstances . . . ." *Mullinex*, 606 F. Supp. 3d at 296. Because Congress has allowed for pain and suffering damages only in the context of seamen's claims against their *employers*, the Court may not expand its scope beyond its written bounds to include a seamen's claims against *non-employers*. *See Miles*, 498 U.S. at 36 ("Maritime tort law is now dominated by federal statute, and we are not free to expand remedies at will simply because it might work to the benefit of seamen and those dependent upon them.").[10]

---

[10] Such findings have been followed in this Circuit. *See Pine v. John Crane Inc.*, 699 F. Supp. 3d 375, 381–82 (E.D. Pa. 2023);

In sum, none of *Batterton's* prongs allow this Court to award pre-death pain and suffering damages in a federal maritime action brought by a seaman against a non-employer manufacturer.

**D.    The Court Cannot Supplement Federal Maritime Law With New Jersey Law**

Plaintiffs argue that the Court should supplement federal maritime law with New Jersey law, which allows for pre-death pain and suffering damages. (*See* Pls.' Opp'n at *12–13.)

To be sure, "federal admiralty courts sometimes do apply state law." *Great Lakes Dredge*, 513 U.S. at 546 (citations omitted). But, as the Supreme Court explained in *Calhoun*, courts may use state law to supplement federal maritime remedies only in maritime wrongful-death cases where (1) "no federal statute specifies the appropriate relief"; *and* (2) "the decedent was not a seaman, longshore worker, or person otherwise engaged in a maritime trade." 516 U.S. at 202.

Seamen are maritime employees who "do the ship's work" and "have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995). Losurdo worked aboard the *Mississinewa* for almost two years while serving in the United States Navy. (PSOMF ¶¶ 15–16.) He performed a "significant part of his work on board the vessel." *Chandris*, 515 U.S. at 369 (citation omitted). And Losurdo, as a petty officer aboard the *Mississinewa*, was unquestionably a "member of [the] crew." *Id.* Losurdo, therefore, was a seaman. Because Losurdo was a seaman, the Court may not supplement federal maritime law with New Jersey remedies.

**E.    Evidence of Pre-Death Pain and Suffering is Inadmissible**

Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Relevance is a low bar. *Forrest v. Parry*, 930 F.3d 93, 114 (3d Cir. 2019). Evidence is relevant if (a) "it has *any* tendency to make a fact more or

---

*Boesenhofer v. Aecome*, No. 17-1072, 2021 WL 11736668, at *1 n.1 (E.D. Pa. June 22, 2021) (denying same damages sought here); *Boozer v. Bell Textron, Inc.*, No. 25-4522, 2026 WL 945706, at *4 (E.D. Pa. Apr. 7, 2026); *Young v. John Crane, Inc.*, No. 21-4493, 2024 WL 5455635, at *1 (E.D. Pa. June 11, 2024).

less probable than it would be without the evidence"; and (b) "the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added).

Evidence of Losurdo's pre-death pain and suffering has no tendency to make any fact of consequence more or less probable. The pain and suffering Losurdo experienced after being exposed to asbestos has no bearing on *whether* or *how* he was exposed to asbestos. Nor does Losurdo's pain and suffering tend to prove or disprove that Defendants breached a duty to Losurdo or proximately caused Losurdo's injuries. And, because pain and suffering damages are unavailable to Plaintiffs, Losurdo's pain and suffering cannot be used to prove damages. Thus, because evidence of Losurdo's pre-death pain and suffering has no tendency to prove or disprove any fact of consequence, it is inadmissible. Fed. R. Evid. 402.

Even if evidence of Losurdo's pre-death pain and suffering were relevant, the Court may nonetheless exclude it if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Assuming evidence of Losurdo's pre-death pain and suffering is relevant, it has minimal probative value at best. And, because Plaintiffs cannot recover for Losurdo's pre-death pain and suffering, such evidence creates a substantial risk of 1) misleading the jury about the recoverable damages; and 2) confusing the issues necessary to establish liability and damages. Therefore, Losurdo's pre-death pain and suffering is also inadmissible under Federal Rule of Evidence 403.[11]

---

[11] Plaintiffs argue that (1) Defendants' motions *in limine* are, in fact, motions for summary judgment; (2) pre-death pain and suffering evidence is necessary to create a complete trial record if Plaintiffs file an appeal; and (3) admitting the evidence is the most judicially efficient course of action. These arguments miss the mark.

First, Defendants' motions *in limine* are plainly not motions for summary judgment. They seek to exclude evidence, not dispose of any issue on the merits. Nor does the Court's ruling grant summary judgment on any issue. Second, the record before an appellate court would invariably include this ruling, which Plaintiffs may challenge. In any event, Federal Rule of Evidence 401 does not have a complete-trial-record-for-appeal exception to the relevance requirement. Third, the most judicially efficient course of action in this case is to exclude inadmissible evidence and thereby narrow the issues for trial.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Westinghouse's motion *in limine* to bar evidence of pain and suffering damages (ECF No. 220); and GE's motion *in limine* to bar evidence of pain and suffering damages (ECF No. 222) are **GRANTED**. An appropriate Order accompanies this Opinion.

**DATED: 6/16/2026**

_____
**JULIEN XAVIER NEALS**
**United States District Judge**